# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HYUN DONG JO,<br>a/k/a 조현동<br>Defendant. | Criminal No. 2:21 Cr. 5<br><br>**JUDGE SARGUS**<br><br>**Sentencing Memorandum of the United States** |

The United States hereby submits its Sentencing Memorandum. There are no pending objections to the Probation Office's pre-sentence report ("PSR"). For the reasons that follow, a sentence of 21 months imprisonment; a restitution order of $288,785; and a criminal fine of $10,000 would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

## BACKGROUND

The Defense Logistics Agency ("DLA") is responsible for obtaining supplies and services for the U.S. Department of Defense, including U.S. military installations located in the Republic of Korea (referred to as "U.S. Forces Korea"). To procure services and supplies for hazardous waste, or potentially hazardous waste, located at U.S. Forces Korea installations, DLA contracts with Korean companies to clean, collect, analyze, remove, recycle and dispose of waste. (PSR ¶ 11.) In October 2014, DLA awarded hazardous waste contract SP4530-15D-0001 to Company A. (PSR ¶ 12.) The initial term of the contract ran from December 26, 2014 to June 25, 2016, and permitted up to two extensions, from June 26, 2016 to December 25, 2017, and December 26, 2017 to June 25, 2019. (*Id.*) DLA exercised both contract extensions. (*Id.*)

The Defendant spent his career working in the hazardous waste industry in Korea; he had

1

experience servicing DLA's hazmat contracts. (*See* PSR ¶¶ 57-61.) The Defendant executed the hazardous waste contract at issue (SP4530-15D-0001), and was designated the contract manager. (PSR ¶ 12.)

One of the many services contemplated under the contract was to test samples of potentially hazardous materials. The contract specified that "sampling and analysis services ordered by the government must conform to United States Environmental Protection Agency (USEPA) or equivalent Korean standards. All analyses must be performed by a laboratory that can document its ability to meet [United States Environmental Protection Agency] or equivalent Korean standards." (Plea Agreement, Statement of Facts ¶ b, at pg. 12 (citing Contract provision § 3.2).) U.S. Forces Korea personnel requested laboratory testing on numerous occasions during the life of the contract.

In response to requests for laboratory testing, from at least February 2015 and through at least June 2018 (the charged "relevant period"), the Defendant submitted to the U.S. Department of Defense hundreds of laboratory reports that appeared to have been prepared by two Korean laboratories. (PSR ¶ 13.) In the first two and a half years of the contract—from early 2015 to November 2017—*all* of the lab reports submitted by the Defendant were forged, meaning the Defendant completely fabricated the substance of the reports. (PSR ¶¶ 13-14.) In the remaining contract time frame, some of the reports were forged, and others were materially altered. (*Id.*) In total, hundreds of lab reports were forged or altered by the Defendant. (PSR ¶ 14.) After submitting the falsified reports to the U.S. Department of Defense, the Defendant emailed invoices, almost always attaching the fraudulent lab reports, to DLA officials at Camp Humphreys in Battle Creek, Michigan. (PSR ¶ 16.) DLA then instructed the Defense Finance and Account Service ("DFAS") to wire payments for lab testing services under the contract.

2

(*Id.*) The Defendant thereby used and caused use of the wires.

DFAS is the financial and accounting organization for U.S. Department of Defense. (PSR ¶ 10.) It is located in Columbus, Ohio. Contemporaneous DFAS records reflect that it wired payments for lab testing and related transportation services worth $288,785 in interstate and foreign commerce to an Industrial Bank of Korea account ending in -04017; an account controlled by the Defendant. (PSR ¶ 17.)

In or around December 2017, a U.S. Department of Defense compliance officer noticed irregularities with one of the lab reports.[1] (PSR ¶ 14.) The compliance officer scanned the lab report's QR code, which returned a different report than the one submitted. (*Id.*) The compliance officer contacted the laboratory that appeared to have prepared the submitted report and was told that the laboratory had not prepared the report submitted by the Defendant. (*Id.*) An investigation followed. In October 2018, prior to the end of the second contract extension, DLA suspended the contract over the laboratory testing concerns. (PSR ¶ 17.)

The health and environmental impact of Defendant's conduct is unknown. (PSR ¶ 18.) In its victim impact statement, attached as Attachment 1, DLA described "economic," "reputation[al]" and "operational" harm caused by Defendant's fraud. (Attachment 1 at 1.) Specifically, DLA alleges that Defendant's fraud resulted in a 160-day disruption of service, during which sixteen hazardous waste facilities exceeded 100% capacity. (*Id.* at 2.) As DLA explains, this meant "many facilities went out of compliance with environmental regulations, and critical mission support had to be halted or minimized to prevent further issues." (*Id.*) DLA stated that the economic harm it suffered included the money paid under the contract, as well as

---

[1] The PSR mistakenly dates this event as in mid-2018. The irregularities were noticed in December 2017, services were put on hold in July 2018, and the contract was suspended in October 2018. The United States apologizes for not correcting this mistake in the initial PSR.

3

indirect costs, and expenditures of time. (*Id.* at 3.) DLA, however, did not, quantify the additional economic harm.[2] (*Id.*)

On March 11, 2021, the Defendant, appearing by videoconference, entered a guilty plea to one count of wire fraud for this lab report scheme. (R. 9.) In the Statement of Facts attached to the Plea Agreement as Attachment A, the Defendant acknowledged intentionally devising a scheme to defraud the U.S. Department of Defense of money by submitting forged or materially altered lab reports. (*See* Plea Agreement, R.2, at 12-14.) In the Plea Agreement, the Defendant agreed that the amount of restitution is $288,785. (Plea Agreement, R.2, at ¶ 9.)

The Defendant does not appear to have assets from which to pay the restitution amount at present. The PSR reflects the Defendant has a negative net worth exceeding $400,000. (PSR ¶¶ 63-64.) Because the PSR relies on Defendant's representations, the United States requested, and the Defendant voluntarily produced, copies of bank statements for the Industrial Bank of Korea account, ending in -04017, into which the U.S. Department of Defense fund were wired.[3] Based on that review, the United States has no objections to the representations of Defendant's financial status reported in the PSR.

The Probation Office released the final PSR on June 23, 2021. There are no pending objections from either party. Sentencing is scheduled for November 9, 2021.

**ARGUMENT**

The Probation Officer and the parties agree on the Sentencing Guidelines calculations.

---

[2] Application note 3(A)(v)(II) to U.S.S.G. § 2B1.1 speaks to this issue and provides: "Procurement Fraud Cases. – In the case of a procurement fraud, such as a fraud affecting a defense contract award, reasonably foreseeable pecuniary harm includes the reasonably foreseeable administrative costs to the government and other participants of repeating or correcting the procurement action affected, plus any increased costs to procure the product or service involved that was reasonably foreseeable."

[3] As of the time the PSR was prepared, the United States had inquired as to the -04017 Industrial Bank of Korea account, and noted that the account may be held in Jo's wife's name or for an entity registered in Jo's wife's name: KB Tech Co. Ltd. As noted above the Defendant voluntarily produced these bank records to the United States after the final PSR was issued.

(PSR, R.16, ¶¶ 26-37; Plea Agreement, R.2, ¶ 8.)  The base offense level for a wire fraud charge is seven.  (PSR ¶ 30; U.S.S.G. § 2B1.1(a).)  The loss amount here was agreed to be $288,785, reflecting the amount the Department of Defense paid in U.S. dollars for lab reports and related transportation costs under the contract.  (PSR ¶ 17.[4])  Transportation costs—which were permitted under the contract, and for which payment was sought in each invoice for lab report(s)—were a reasonably foreseeable pecuniary harm, and thus appropriately included in actual loss.  (U.S.S.G. § 2B1.1, Application Note 3(A)(iv).)  Because loss exceeds $250,000, a 12-point enhancement is warranted.  (PSR ¶ 32; U.S.S.G. § 2B1.1(b).)  The Defendant pleaded guilty and accepted responsibility for his conduct, thus qualifying for a three-level downward adjustment.  (PSR ¶¶ 39-40; U.S.S.G. § 3E1.1(a), (b).)

The Probation Officer and the parties agree that a two-point enhancement under U.S.S.G. § 2B1.1(b)(10)(B) should not be applied as to this Defendant.  (PSR ¶ 33.)  Sentencing Guideline § 2B1.1(b)(10)(B) permits an enhancement where "a substantial part of [the] fraudulent scheme was committed from outside the United States."  The Sentencing Commission's Commentary indicates that this enhancement was meant to increase the offense level for schemes "that involve conduct, such as sophisticated concealment, that makes it difficult for law enforcement authorities to discovery the offense or apprehend the offenders," including schemes that purposefully conduct their operations from outside the U.S. or "relocate their schemes to other jurisdictions once they know or suspect that enforcement authorities have discovered their scheme."  U.S. Sentencing Commission Commentary, "Reason for Amendment" *available at*

---

[4] DLA set fixed prices for the provision of services, including obtaining laboratory testing, and transporting samples for testing from various USFK installations.  Jo's invoices to the government sought compensation for the laboratory reports and accompanying transportation charges.  Jo invoiced the government in Korean Won, but DFAS kept a contemporaneous record of the exchange rate on the date wire payments were issued.  We used DFAS's recorded exchange rates in calculating losses.

https://www.ussc.gov/guidelines/amendment/577. The Defendant, however, did not commit the scheme from Korea in order to evade law enforcement or apprehension. To the contrary, the Defendant has taken steps to accept responsibility for his conduct, including by speaking to law enforcement agents, pleading guilty, and agreeing to submit to U.S. custody without an extradition. Applying the two-point enhancement in these circumstances does not further the goals envisioned by the Sentencing Commission.

The resulting offense level is thus 16. For a Category I offender such as the Defendant, an offense level of 16 corresponds to a prison term of 21-27 months. The resulting criminal fine for an offense level 16 is $10,000 - $95,000. U.S.S.G. § 5E1.2(c)(3). Restitution was agreed to be $288,785. (Plea Agreement, R.2 ¶ 9.)

**I.      Based on the statutory sentencing factors, the United States recommend a 21-month term of imprisonment**

Based on the factors listed in 18 U.S.C. § 3553(a), the United State recommends a Guidelines range sentence of 21 months' imprisonment; no term of supervised release; a criminal fine of $10,000; and a restitution order of $288,785.

*Nature and circumstances of the offense:* The offense here was egregious, not only because the U.S. Department of Defense was defrauded of more than $250,000, but because Defendant's conduct created the risk that U.S. service members would be unknowingly exposed to hazardous waste or that hazardous waste would be improperly disposed of in Korea. For years the U.S. Department of Defense was deprived of the opportunity to make informed decisions about the treatment and disposal of potentially hazardous waste because of Defendant's scheme. Once discovered, DLA suspended the contract and had sixteen locations on U.S. Forces Korea installations where capacity exceeded 100% for hazardous waste. While it is fortunate that there are no known health consequences resulting from Defendant's scheme, the fact the Defendant

knowingly forced this risk upon the Department of Defense exasperated the seriousness of his offense.

The Defendant enjoyed the fruits of his crime. Despite being unemployed since the discovery of his fraud in 2018, the Defendant purchased his current residence in Dongan, South Korea in 2019. He also owned a 2019 Lexus. Defendant transferred ownership of the Lexus to his wife on February 18, 2020, less than two weeks after the United States conveyed the substance of its initial plea offer to his counsel. Defendant transferred ownership of the residence to his wife on March 10, 2020, the day before he pleaded guilty to the instant offense.

The United States respectfully submits that this factor weighs in favor of a Guidelines range sentence of incarceration.

*History and characteristics of the defendant:* The United States acknowledges that the need for specific deterrence is low. The Defendant is 63 years old, he has close relationships with his supportive family, and he promptly accepted responsibility for his conduct.

The United States, however, submits that little to no weight should be afforded to Defendant's justification that he needed to fabricate the laboratory reports because he was losing money by obtaining such reports. The Defendant spent his career working in the hazardous waste industry, including for companies that contracted with DLA to provide services to U.S. Forces Korea installations. He signed the contract and was designated the contract manager. When a request was made for laboratory testing under this contract, he did not obtain authentic reports only to realize their expense—he forged the very first report, and every one thereafter for more than two years. Rather than withdraw from the contract after the initial contract term, the Defendant allowed DLA to exercise two contract extensions. The Defendant knew the importance of these tests, and he chose to mislead and defraud the U.S. Department of Defense.

The United States respectfully submits that the history and characteristic of the defendant thus warrants a Guidelines range sentence.

*Reflecting the seriousness of the offense and affording adequate deterrence:* There is a strong need for general deterrence here as the falsification of hazardous waste lab reports is a serious offense that can have health and environmental consequences. Defrauding the U.S. Department of Defense and knowingly endangering the health and safety of U.S. servicemen and women stationed abroad for personal gain is a grievous act.

A noncustodial sentence would neither reflect the seriousness of this offense nor afford adequate deterrence. This fraud was not of the type which would warrant a downward departure from the Guidelines. Defendant's fraud not only resulted in loss to the U.S. government, it endangered countless lives and had potential to cause serious environmental and diplomatic harm. A sentence below the Guidelines would send the dangerous message that individuals motivated by greed can forge lab reports, endanger lives, and collect their ill-gotten gains without ever being held fully accountable for their actions.

The United States respectfully submits that this factor also weighs in favor of a sentence within the Guidelines range.

## CONCLUSION

For these reasons, a sentence of 21 months' imprisonment; no term of supervised release; a criminal fine of $10,000; and a restitution order of $288,785, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

Julia M. Maloney
Melanie Krebs-Pilotti

Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 5th Street, NW
Washington, DC 20530
Tel: 202-704-8039
Julia.Maloney@usdoj.gov

**ATTACHMENT 1**



**DEFENSE LOGISTICS AGENCY**
**DISPOSITION SERVICES**
**74 WASHINGTON AVENUE NORTH**
**BATTLE CREEK, MICHIGAN 49037-3092**

17 May 2021

Honorable Edmund A. Sargus, Jr.
Joseph P. Kinneary U.S. Courthouse
Room 301
85 Macroni Boulevard
Columbus, Ohio 43215

      RE:    Victim Impact Statement
                *United States v Hyun Dong Jo*, 2:21 cr. 5 (S.D. Ohio)

Hon. Sargus, Jr.:

      The Defense Logistics Agency (DLA) is the nation's combat logistics support agency, supporting the Department of Defense and other federal agencies. DLA Disposition Services provides support to our nation's warfighters with the management and disposal of hazardous property, waste, and material. Hazardous wastes are handled through a worldwide network of disposal contracts and are subject to federal and international laws implemented to protect our environment. In this truly global endeavor, Disposition Services relies on an extensive network of contractors. Defendant Hyun Dong Jo was one of those contractors. Defendant's fraudulent actions not only caused measurable economic damage, but they negatively impacted Disposition Service's reputation and operational capacity. Disposition Services respectfully requests that the Court considers these factors in its sentencing decision.

      Defendant was the designated Contract Manager under a contract with Disposition Services for the testing and disposal of hazardous waste in the Republic of Korea. Under the contract, Defendant was required to provide sampling and analysis services of hazardous waste in conformance with U.S. or equivalent Korean standards. Accurate testing is an absolute imperative to ensure that hazardous waste can be disposed in an environmentally safe manner. As Defendant has now admitted, he falsified hundreds of analytical reports to Disposition Services. The specific impact of Defendant's action cannot be understated.

**I.**      <u>**Loss of Credibility and Service to the US Military in Korea**</u>

      From Disposition Services prospective, a paramount impact was on its credibility and ability to serve the US military in Korea. United States Forces Korea (USFK) relied on the analytical reports for accurate representation of the hazards in generated wastes. USFK needed to determine the level of Polychlorinated Bisphenols (PCBs) to ensure environmental compliant disposal methods. Defendant's actions prevented an accurate determination and diminished Disposition Services' credibility in the process. The Environmental Division Chief for United States Army Garrison Humphreys in Korea sent

an email hammering home the impact of Defendant's conduct, stating bluntly that Disposition Services' analytical testing has "<u>lost credibility from my office</u>." This loss of credibility strikes at the very core of Disposition Services' ability to support the warfighter at home and abroad. More concretely, Defendant's actions led to the difficult decision that Disposition Services will no longer offer analytical testing services on hazardous waste disposal contracts in Korea.

**II.     Disruption in Service**

Unsurprisingly, Defendant's fraudulent conduct led to a significant break in services – <u>160 days to be precise</u>. Services stopped around July 24, 2018 and did not resume until January 3, 2019.

**III.    Compliance Issues**

The disruption in services engendered by Defendant's fraud caused serious compliance issues. Sixteen hazardous waste storage facilities across the Korean peninsula went over 100% capacity within 90 days after the cessation of services. Due to the break in services, many facilities went out of compliance with environmental regulations, and critical mission support had to be halted or minimized to prevent further issues. All of this was a direct result of Defendant's fraud.

**IV.     Increase Cost to Department of Defense**

Direct and indirect costs passed on to the Department of Defense are numerous. USFK had to incur the direct cost of retesting all falsified reports from Defendant. Additionally, because Disposition Services had to pause service under the hazardous waste disposal contracts, budgeted expenditures were impacted. Alternate and additional secure containers needed to be purchased to handle the build-up of hazardous waste. Generators also now need to incur the additional cost of analytical testing.

**V.      New Contract Costs**

Numerous personnel were involved in the mission critical solicitation of the new hazardous waste contract. The hazardous waste contract had to eventually be split into three regional contracts to timely serve the warfighter. These costs would not have been incurred but for the actions of the Defendant.

**VI.     Disposition Services' Indirect Costs**

Disposition Services' Korean Area Manager had to exponentially increase services in support of the warfighter. Examples include: (1) locating and requisitioning temporary containers to convert into temporary hazardous waste storage; (2) filling

requisitions for hazardous waste containers and other supplies; (3) providing daily updates, briefings and slides to senior leadership and senior military commanders responsible for this hazardous waste; (4) working with <u>sixteen</u> individual Environmental Chiefs serving on the bases in Korea; and (5) coming up with solutions for viable hazardous waste removal. Provision of these critical services degraded Disposition Services' ability in other areas. All of this was the direct result of Defendant's actions.

      Defendant's action's hurt Disposition Services' credibility and reputation as the nation's premier disposal agency. Defendant's actions also had great potential to impact the safety of countless individuals. Defendant's actions resulted in the additional expenditure of time and money. While Defendant has now admitted his fraudulent conduct, he only did so after harming Disposition Services, the US military in Korea, our allies in Korea, and the U.S. taxpayer. Restitution of $288,785 as identified in the Plea Agreement captures only a small portion of the damage in this case. For all the above reasons, Disposition Services respectfully requests that this Court hold Defendant appropriately accountable for his actions.

                                                        Respectfully Submitted,


                                                        TRACY M. HART
                                                        J7 Director and CCO
                                                        DLA Disposition Services

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was electronically filed and served by the CM/ECF system on all counsel of record this 19th day of October, 2021.

/s/ Julia M. Maloney
JULIA M. MALONEY
Trial Attorney
Antitrust Division
